Cobb, Ch. J.
The appellant alleged that on July 16, 1872, the appellees Maria'Stone and B. E. Stone made their five promissory notes for $70, each payable to the order of P. D. Cheney, in one, two, three, four, and five years after date, with twelve per cent interest from maturity; that on the same day the appellees executed to Cheney a mortgage on the northwest quarter of section 4, and northeast quarter of section 5, township 4, range 9, in Johnson county, in this state, to secure the notes; the first four of the notes were paid; that due July 16,1877, remained unpaid; that before its maturity it was indorsed by Cheney to the appellant; that S. P. Davidson claims an interest in the land. 'Prayer is for foreclosure. Appellees B. F. Stone and Davidson answered in a motion to quash the summons and service, which was overruled.
Maria Stone answered, denying that appellant was the bona fide, owner of the note, or that he purchased it in the usual course of business before due, and without notice. She set up that the.consideration for the five seventy-dollar notes and mortgage, was a usurious interest of a loan of *619 $1,000, from Cheney and B. Murray, Jr., at seventeen per cent; that the loan was obtained by her husband; that she received no consideration; that tlie land is her separate estáte and the mortgage is void; that she has since conveyed the land to Davidson and Thomas Appelget, with the agreement to make defense against the note and mortgage; that by the terms of the mortgage the whole debt was due if default was made of thirty days in the payment of any one of the notes; that default was made on the four-year note after thirty days, and more than ten years prior to the suit, which is barred by the statute of limitation. The reply to this answer denied all the allegations.
On November 13, 1888, the issues were tried in the district court of Johnson county, without a jury, on the following stipulation : (Verbatim) “ It is admitted that if the witness B. F. Stone were present he would testify in this case that the entire consideration for which the note and mortgage was given, was for usurious interest on a loan of money obtained from one Byron Murray, Jr., and that the statement of what this witness would swear to may be used as evidence on the trial in this case. It is further agreed that the notes and mortgage set out in plaintiff’s petition were made as there set out, and that they are true and correct.”
The plaintiff offered in evidence a copy of the note attached to the petition, marked Exhibit A, and of the mortgage marked B.
“Exhibit A.
“$70.. .Tecumsei-i, Nebraska, July 16, 1872.
“ Five years after date, for value received, I promise to pay to the order of P. D. Cheney, seventy dollars, at bank in Tecumseh, without interest, and twelve per cent per annum after maturity as liquidated damages for non-payment when due. Maria Stone.
“ B. F. Stone.
“ Indorsed: P. D. Cheney.
*620 “ Exhibit B.
“ The mortgage is in the usual form; it describes the five notes of $70 each, as dated July 16, 1872, due in 1, 2, 3, 4, and 5 years after date, describes the land and binds it for payment of the notes. It stipulates that if any one of the herein described notes remain unpaid for thirty days after maturity, this entire debt, all said notes, principal and interest, shall become immediately due and payable, and this mortgage may then be foreclosed. In case of foreclosure an attorney’s fee of ten dollars shall be paid by defendants, and decree shall be entered therefor.
“It recites that this mortgage is subject to a mortgage given to B. Murray Jr., to secure $500.”
The plaintiff’s deposition, taken April 9,1888, was read as follows:
“I am the plaintiff; am sixty years of age; I am engaged in buying notes, mortgages and other securities; do not know any of the defendants; am owner of the note and mortgage on which this suit is based; I purchased them from P. D. Cheney in May, 1876 ; I purchased two notes of $70 each; I paid $125 for the two notes secured by the mortgage; the mortgage stated that it was a second mortgage, being subject to a mortgage given to B. Murray, Jr., for $500. Cheney told me the notes were given for a debt which Stone owed him; Cheney did not tell me the notes were given for a loan of money or for a commission for procuring a loan of money; I never heard that such was the consideration for the notes until I learned it from the answer of Maria Stone, which I obtained from my attorney, L. C. Chapman. There was with the notes and mortgages, when I purchased them, a document called a declaration of no set-off, which I have and here produce and hand to the notary public, to be attached to this deposition as a part of the same, which is done, and it is marked Exhibit A. I believed the statements made in *621 said declaration were true, and I bought the notes and mortgage relying upon the represeirtations contained in it. I had been in Johnson county and was familiar with the land and its value. The mortgage covered 320 acres twelve miles west of Tecumseh, and I knew the security to be good notwithstanding the prior mortgage of $500. I had no knowledge or information concerning the original consideration for the notes except what Cheney told me, which I have stated above in full.”
“ Exhibit A, attached to Deposition op A. Richardson.
“ Declaration of No Set-off to Mortgage.
“Know all men by these presents, that we, B. F. Stone and Maria Stone, did on July 16, 1872, execute to P. D. Cheney five promisory notes for $350, also a mortgage of same date, securing said note, on N. W. J 4, N. E. ] 5, 4, 9; and whereas, we-are informed that the mortgagee is about to assign said notes and mortgage, therefore we, for the assurance and protection of any assignee who may at any time become the holder of said notes, or any of them, do hereby certify, acknowledge, and declare that we have no defense, set-off, or claim whatever in law or equity to make against said notes and mortgage, and we hereby consent to any assignment that may be made.
“Maria Stone,
“B. F. Stone. .
“'In presence of
“ B. F. Perkins.”
It was admitted by the plaintiff that Davidson owned the land, one-half by quitclaim deed, the other half by deed of warranty. It was admitted by Davidson that his warranty deed was from Appelget, who was one of the grantees in the quitclaim deed with Davidson.
B. F. Stone, sworn for defendant: “ I am the husband of Maria Stone, the defendant; I was present when the papers connected with the land of which this was part were *622 signed. Tlie notes and mortgages were all signed at same time. No declaration of any set-off was signed after the notes and mortgage were signed, nothing of the kind to my knowledge; it was signed at same time with notes and mortgage. There were no $70 notes outstanding in 1876 or since against Mrs. Stone, except those involved in this suit. There was not, to my knowledge, any $140 notes outstanding against her. If there had I think I should have known it.”
On cross-examination, testified that his wife had never given notes of any description without his being present.
The defendant demanded the production of the original mortgage and note. The plaintiff admitted having the no.te, but alleged that the mortgage was lost.
L. C. Chapman, sworn for defendant: “I had the mortgage sued on when I brought this suit; at your request, Judge Davidson, I looked for the mortgage and could not find it; I looked for it where I supposed it was, and where I supposed I could put my hand on it at any time, but did not find it; I have now in my possession the note named in the petition, which I now produce; the figuring in pencil on back of note is mine.”
Defendant offers in evidence the original note, copy of which is attached, marked Defendant’s Exhibit A., viz.:
“$70. Tecumseh, Nebraska, July 16, 1872.
“Five years after date, for value received, I promise to pay to the order of P. D. Cheney seventy dollars, at bank in Tecumseh, without interest, with twelve per cent per annum after maturity as liquidated damages for non-payment when due. Maria Stone.
“B. F. Stone.
“ Indorsed on back: P. D. Cheney.”
Witness continues, Q. 18: “I cannot produce the mortgage as it is lost. I don’t remember that the mortgage had on it any indorsements of the notary who took the *623 deposition in Davis v. Stone. I received this note and mortgage diréct from the, plaintiff. If the original mortgage could be found I would produce it in a moment; I have done my best to find the original mortgage and cannot find it; I would find it if I could, but I cannot find it.”
T. Appelget was sworn for defendant, and testified that he was practicing law in 1878, and was attorney for the defendant in the United States court, W. G. Davis v. Maria Stone; that there were two cases; Warren was attorney for both Davis and Cheney, and got leave to withdraw Cheney’s case and consolidate it with that of Davis. I remember the statement he made to the court that he had misunderstood Cheney; that the notes all belonged to Davis, and that Cheney did not own any of them. I remember there was a deposition of E. F. Warren to the effect explaining how he came to make the mistake.- I think I saw what purported to be the original notes and mortgage. I can scarcely tell whether I think I saw this note; whether it was the same note; it has been some seven, eight,' or nine years ago. I cannot say whether the end of the.note was clipped off at that time as my attention was not called to that fact.
On cross-examination, stated: “No, sir, I do not swear that I saw this identical note; as to that identical note I am not positive; it is my impression it is the same note.”
S. P. Davidson, sworn for defendant: “ I was associated with Appelget as attorney for defendant in Davis v. Maria Stone; I remember the ease was -brought upon-$1,000 note; there was either a second suit by Cheney, or else it was a cross-petition in which Cheney claimed to be the owner. At any rate it resulted in the filing of this kind of a bill, a copy of which has been offered in evidence. I saw what purported to be the original notes and mortgage on file in the case attached to the deposition, I think, of E. F. Warren.”’
On cross-examination, said: “ I can only state this, that *624 what purported to be the original notes and the mortgage I saw on file, I can only say that the note I saw and the mortgage I saw were what purported to be the original-notes and mortgage covering this land. I am well satisfied that the notes were in the handwriting of P. D. Cheney, and the written portion of this note is in his handwriting, and that is Mrs. Stone’s signature. I know that if that note had been clipped off in this manner that I or anybody else would have noticed it at that time.”
Defendant’s Exhibit C, copy of amended bill filed May 14, 1878, in United States circuit court in Wm. G. Davis v. Maria Stone and B. F. Stone, alleges that Stone executed mortgage on land in controversy to secure $1,000 and ten per cent interest therein described; that said Stone also executed mortgage to P. D. Cheney five notes for $70 each, and executed mortgage on land in controversy to secure same; that all said notes and mortgages were dated July 16, 1872. Alleges that the five $70 notes were assigned by Cheney to Davis.
The court below found for the defendants and entered judgment for costs.
On an appeal to this court, at the September term, 1889, the judgment of the district court was affirmed, 28 Neb., 137; 44 N. W. R., 105.
Subsequently a rehearing was had on the application of the appellant on the grounds:
First — The incompetency of the evidence admitted to establish the usury set'up by appellee.
Second — By their release of defense, appellees are es-topped from setting up usury.
Third — The appellant cannot be prejudiced by any proceedings in the United States court, of Davis v. Stone.
. It was stipulated on the trial, as appears of record, “that if the witness B. F. Stone were present, he would testify that the entire consideration for which the note and mortgage were given was for usurious interest on a loan of *625 money from Byron Murray, Jr., and that the statement of what this witness would swear to may be used as evidence on the trial of the case.” No evidence was offered contra, but as the stipulation provided that “ It is further agreed that the notes and mortgage set out in the petition were made as there set out, and are true and correct,” it became the privilege of the appellant to introduce this agreement as evidence, which he did. On this question the court said in its opinion: “ While it is true that had the witness been called to prove the fact of usury, and objection been made to the method of proof, he would have been required to state the facts from which conclusions could have been drawn; but no objection was offered to the stipulation upon that ground. It was accepted as proof of the fact of usury. No effort was made to prove differently, and it must now be accepted as true.”
It was held in Bennett v. Rogers, 12 Neb., 384, that “ where proof, as well as pleading, is of a doubtful as well -as equivocal character, it must be construed least favorable •to the party offering it; ” and in Holland v. Griffith, 13 Neb., 474, that “a paper clearly inadmissible under the pleading having been put in evidence by the plaintiff, he was bound by its provisions.”
It has been repeatedly held, where doubtful testimony was allowed to go to the jury without objection, and an adverse ruling without exception, the error was not subject to review in this court. (Dutcher v. State, 16 Neb., 31; Fager v. State, 22 Id., 332.) “Nor can error be predicated upon evidence introduced upon evidence without objection.” (R. R. Co. v. Wiebe, 25 Neb., 543.)
The evidence complained of having been offered by the plaintiff, without contradictory testimony, is an admission of usury as the consideration of the note and mortgage sued upon; and added to the fact of the introduction of the •■stipulation by the party complaining, it contains the agree *626 ment that it shall be used in evidence, which precludes the appellant from urging reversible error in this court.
As to the second grounds of reversal we find no proof of the execution of the release of defenses to the cause of action. There is evidence tending to prove that it was not signed at the time nor immediately after the notes and mortgage were executed. The burden of proof was therefore upon the plaintiff to establish the relinquishment, as its simple presence, with the notes and mortgage, was not proof of its execution by the parties. A rule of law to be regarded in this instance is that the release, if signed and delivered with the notes and mortgage, instead of working an estoppel is sufficient’ to excite suspicion and put a purchaser on such an inquiry as to lead to the discovery of the usury. (1 Dan., Neg. Insts., 862; Jaqua v. Montgomery, 33 Ind., 46.)
As to third grounds, testimony was admissible to contradict that of the plaintiff’s purchase and ownership of the note and mortgage, and his ignorance of the usurious consideration. For this purpose, the bill exhibited by Davis v. Stone, in the United States circuit court, on May 14, 1878, for the collection of the same note and mortgage now sued on, according to the weight of evidence in the case, was strongly presumptive against the plaintiff’s testimony. It appeared from the bill to have been the same note and mortgage; and, while the mortgage was not produced, the note was, but in such a trimmed and torn condition as to corroborate the fact of another and different ownership. The court held, therefore, that the burden of proof was upon the appellant to show that he was an innocent purchaser for value, before maturity, and without notice of usury, which he had signally failed to do.
The former opinion of the court is adhered to.
Judgment accordingly.
The other judges concur.